IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | Criminal No. 10-80 |
| ) | |
| WALTER VANCE HARRIS, ) | |
| ) | |
| Defendant. ) | |

ORDER

AND NOW, this 21st day of December 2022, upon consideration of the Motion for Early Termination of Supervised Release, pursuant to 18 U.S.C. § 3583(e)(1), filed by Walter Vance Harris ("Defendant") in the above captioned matter on October 26, 2022 (Doc. No. 96); the Government's Response in Opposition (Doc. No. 98), filed on November 16, 2022; and Defendant's Reply (Doc. No. 99), filed on November 17, 2022,

IT IS HEREBY ORDERED that the motion is GRANTED.

I. Background

Defendant was sentenced to 188 months' imprisonment and a five-year term of supervised release for having violated 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii) by possessing with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine. (Doc. No. 51). On December 30, 2020, when Defendant had served approximately 146 months of his term of imprisonment, the Court granted his Motion for Reduction in Sentence (hereinafter "compassionate release") pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and reduced his term of imprisonment to "TIME SERVED." (Doc. No. 94). After the Court reduced Defendant's term of imprisonment, his five-year period of supervised release commenced. Now, having been under supervision for approximately twenty-one months,

1

Defendant has moved for early termination of his supervision. The Government has expressed its opposition to Defendant's motion and the matter is ripe for adjudication.

## II.     Legal Analysis

The Court is authorized to "terminate a term of supervised release" after considering the factors at 18 U.S.C. § 3553(a)(1), (a)(2)(B)—(D), and (a)(4)—(7) once a defendant has completed one year of his or her supervised release term "if [the Court] is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." *United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020) (quoting 18 U.S.C. § 3583(e)(1)). "The burden is on the defendant to show that early termination is warranted under the factors set out in the statute." *United States v. Mabry*, 528 F. Supp. 3d 349, 356 (E.D. Pa. 2021). The Section 3553(a) factors enumerated in Section 3583(e) address:

> (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established for the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

*United States v. Sheppard*, 17 F.4th 449, 455 (3d Cir. 2021) (quoting *Melvin*, 978 F.3d at 52). With respect to the Court's consideration of "conduct of the defendant" and "interest of justice," the "expansive phras[ing]" of those considerations "make[s it] clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination" of supervision. *Melvin*, 978 F.3d at 52 (quoting *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014)).

The United States Court of Appeals for the Third Circuit has explained that "exceptional, extraordinary, new, or unforeseen circumstance[s]" is not a prerequisite for ending a supervisee's period of supervision early. *Id.* at 53. But, because sentences as they are originally imposed are meant to be no greater than necessary, it will generally be "expect[ed] that something will have changed in the interim that would justify an early end to a term of supervised release." *Id.* The Court, in its analysis of the motion for early termination of supervised release, must show that it "considered the statutory factors," *Id.* at 52—53 (quoting *United States v. Gammarano*, 321 F.3d 311, 315–16 (2d Cir. 2003)); however, the Court is "not required to make specific findings of fact with respect to each of these factors." *Id.*[1]

In this matter, Defendant has argued that his exemplary conduct and community activism warrant immediate termination of his supervised release. He has submitted to the Court that he has complied with all terms of supervision since his release on February 25, 2021. Consistent therewith, Defendant's probation officer indicated in a matter unrelated to the instant motion that, as of October 12, 2022, Defendant "ha[d] remained compliant with his terms of supervision and there [were] no known violations." (Doc. No. 95). Defendant has argued that beyond mere compliance with his terms of supervision, he has used the time since his release to become "deeply involved in community activism and organization" with many organizations including

---

[1] In support of his motion, Defendant has underscored the rehabilitative—as opposed to punitive—nature of supervised release. The Court bears that in mind and recognizes that the goal of supervised release is not to further punish an individual but to "assist individuals in their transition to community life." *United States v. Murray*, 692 F.3d 273, 280 (3d Cir. 2012) (quoting *United States v. Johnson*, 529 U.S. 53, 59 (2000)). However, the Court further notes that the term of supervised release imposed at sentencing reflects the sentencing court's determination of the appropriate duration of supervision for a Defendant to successfully transition to community life. A supervisee's compliance with the terms of supervision for a time does not render any remainder of the period of supervision, as initially imposed, effectively punitive.

Fathers on the Move ("FOTM"), the Elsinore Bennu Think Tank for Restorative Justice ("EBTT"), Voices for Juvenile Justice ("VJJ"), the Erie Participatory Defense Hub, West End POWER, and the Allegheny County Anchored Re-Entry Consortium ("ACAR"). (Doc. No. 96, pgs. 2—5). The materials filed in support of his motion include letters from various leaders and members of these organizations.[2] Defendant has further argued that termination of his supervision would facilitate his community engagement, particularly with incarcerated populations. (Doc. No. 96, pg. 2).

The Government has opposed Defendant's motion and has argued that Defendant has not adequately addressed whether termination of his supervision is warranted by the interest of justice. The Government has further argued that the interest of justice does not warrant termination of supervision. Not only that, but the Government has also contended that Defendant's request is undermined by the nature/characteristics of his offense, his criminal history, and the need for adequate deterrence. Having considered the parties' arguments, the Court has determined that termination of supervised release is warranted in this matter.

As an initial matter, the Court has considered all relevant Section 3553(a) factors, though it will not explain its consideration of each of them herein.[3] The nature and circumstances of

---

[2]    The materials filed in support of Defendant's motion include: a letter from members of the EBTT; a letter of support from Pastor Victor Glover, the CEO and Executive Director of FOTM; mentor-training certificates from FOTM dated 4/23/2022; a letter of support from Lucas Goodwin, a founder and "de facto director" of VJJ; flyer and conference schedule for the Inaugural VJJ Conference on October 15, 2022, where Defendant was a roundtable facilitator for a discussion about state and federal sentencing; a letter of support from Terri Minor Spencer, the founder and Executive Director of West End POWER; a letter of support from organizers of various "Participatory Defense Hubs"; and a letter of support from Cindy LaCom, Gender Studies Program Director at Slippery Rock University regarding shared work with Defendant at VJJ and EBTT. (Doc. No. 96, Exhibit A).

[3]    The Government has vigorously argued that Defendant may not rely on this Court's consideration of the Section 3553(a) factors in its order granting Defendant's motion for

Defendant's offense, as well as his criminal history, are undoubtedly serious. The serious nature of Defendant's offense was reflected in the substantial sentence imposed as well as the amount of time Defendant was imprisoned. The substantiality of Defendant's term of imprisonment lessens concern the Court might otherwise espouse regarding the avoidance of sentencing disparities among similarly situated defendants. Defendant's recent history has demonstrated to the Court that continued supervision is not necessary to protect the public from further crimes. And, in the Court's consideration of the necessity of, *e.g.*, educational training, the Court has further considered that it appears *Defendant* has become a community educator: according to materials submitted in support of his motion, Defendant recently shared his experiences with the state and federal legal systems by facilitating a conversation about the potential impact of a juvenile record in federal sentencing. (Doc. No. 96, Ex. A, pg. 14).

    The Court has further considered whether Defendant's conduct and the interest of justice

---

compassionate release because the analyses for compassionate release and supervised-release terminations differ. The Government has argued that, for a compassionate-release determination, a court first determines whether extraordinary and compelling reasons for reduction are present and then weighs such reason(s) against the relevant sentencing factors. (Doc. No. 98, pg. 5 (citing *United States v. Lugo*, 832 Fed. Appx. 799, 800 (3d Cir. 2021)). Alternatively, a supervised-release termination analysis "entails a different inquiry," wherein a court considers "certain § 3553(a) factors in determining whether the defendant's conduct and the interests of justice warrant early termination." (*Id.*).

    The Court is unconvinced that the asserted distinction is meaningful. Section 3582(c)(1)(A) directs courts to consider whether they can find "[e]xtraordinary and compelling reasons warrant . . . a reduction" after considering Section 3553(a) factors. Section 3583(e)(1) is similarly structured: it directs courts to first consider certain enumerated Section 3553(a) factors and further directs that, "after considering [those] factors," a court may terminate supervised release if "warranted" by conduct and the interests of justice. For both actions, the text suggests that a court's consideration of relevant sentencing factors is an essential but separate inquiry from a court's consideration of—alternatively—extraordinary and compelling reasons or conduct and the interest of justice. That said, the Court has herein considered the Section 3553(a) factors anew rather than relying on its consideration of such factors in its adjudication of Defendant's compassionate release motion.

warrant termination of his supervised release.  This Court and others have explained that compliance with terms of supervision is expected of all supervisees.  *United States v. McCain*, No. CR 95-36-8, 2021 WL 2355687, at *4 (W.D. Pa. June 9, 2021) ("Compliance with the conditions of supervision, including refraining from engaging in criminal conduct and being employed . . . is *required* behavior while serving a term of supervised release."); *United States v. Damiano*, No. CR 07-153, 2020 WL 7263183, at *2 (E.D. Pa. Dec. 10, 2020) ("But basic compliance with the terms of supervised release generally is not enough to warrant termination of supervised release.  It is the expectation.").  However, Defendant's conduct since being released has gone beyond mere compliance with the terms of his supervision.  In a letter supporting Defendant's motion, Pastor Victor Glover indicated that "Mr. Harris . . . has reconnected with his children and has become a leader to his family as well as to his community."  (Doc. No. 96, Ex. A, pg. 4).  Pastor Glover further indicated that Defendant is a leader within the FOTM organization and that he mentors youth at local schools.  (*Id.*).

Founder of VJJ, Lucas Goodwin, indicated that Defendant is "one of the most active and dedicated members on [its] team."  (Doc. No. 96, Ex. A, pg. 9).  Over thirty organizers of various Participatory Defense hubs signed onto a letter indicating that Defendant has donated his time to helping the families of incarcerated persons.  (Doc. No. 96, Ex. A, pg. 25).  Cindy LaCom, Director of Gender Studies at Slippery Rock University, indicated that she has worked with Defendant through EBTT and VJJ.  (Doc. No. 96, Ex. A, pg. 27).  She described Defendant as essential to the "mission and vision" of those organizations and commended his "commitment to justice" and his ability to "collaborate and connect community partners across bridges."  (*Id.*).

With respect to the interest of justice, Defendant has argued that his work with organizations like FOTM and EBTT is somewhat hindered by his supervision: "Being on active

supervision presents an obstacle to some community-engagement: some facilities do not admit those on active supervision." (Doc. No. 96, pg. 2). Defendant's supporters at the EBTT corroborated his intent to go into prisons and "help prepare incarcerated citizens for successful reentry." (Doc. No. 96, Ex. A, pg. 3). Pastor Victor Glover wrote that Defendant "has a passion to return to prison as a leader for [FOTM] in which he is preparing for by receiving the training from [FOTM] on how to mentor those whom are incarcerated." (Doc. No. 96, Ex. A, pg. 4). The organizers of various Participatory Defense hubs likewise advocated for termination of Defendant's supervision to "empower him to offer an even wider range of support to" "individuals involved in the criminal legal system" and their families. (Doc. No. 96, Ex. A, pg. 25).

Having considered the relevant Section 3553(a) factors and Defendant's conduct with the interest of justice, the Court will exercise its discretion to terminate Defendant's supervised release. The Court notes that Defendant's conduct has been particularly compelling in this matter. The degree of commitment that Defendant has shown to his community over the past twenty-one months by his willingness to leverage his experience to the betterment of the community is commendable and beyond what is expected. Based on this and the Court's foregoing consideration of the relevant factors, the Court will grant Defendant's motion and thereby terminate his term of supervised release.

### III. Conclusion

THEREFORE, for the reasons set forth in this order, Defendant's Motion for Early Termination of Supervised Release is GRANTED.

s/ Alan N. Bloch
United States District Judge

ecf:   Counsel of Record